MILLS, Judge.
Toler appeals from a conviction and sentence for burglary of a dwelling. He contends the trial court erred in allowing certain testimony and in denying motions for judgment of acquittal. We affirm.
On 23 August 1983, someone broke into Robert Morris’ trailer near Keystone Heights. Toler was arrested for the crime, charged with burglary of a dwelling, tried and convicted by a jury. He was sentenced to 15 years in prison.
Morris’ trailer was located in a rural area. On the evening of 23 August 1983, Mrs. Prill who lived in a nearby trailer, saw a truck driving slowly down the road between her residence and Morris’ trailer. She saw the truck turn down a road near Morris’ trailer and shortly thereafter heard a sound “like wood breaking.” She saw a flashlight shining inside the trailer. She also heard conversation but could not distinguish the words. Mrs. Prill called the police who arrived soon thereafter.
Investigator Taylor of the Clay County Sheriff’s Department arrived at the scene and discovered footprints on the side of the road near Morris’ trailer and near the tongue of the trailer. He also discovered tire tracks near the trailer. Taylor testified that the tire tracks indicated at least three different kinds of tires on one vehicle. He testified the footprints showed a unique grid-like design.
Deputy Jones of the Clay County Sheriff’s Department also saw the footprints near the trailer and the nearby tire tracks. Both Jones and Taylor testified that Toler’s truck had at least three different kinds of tires which could have made the tire tracks they found. They also testified that the boots Toler was wearing when he was arrested had the same grid-like pattern on the soles as that shown by the footprints found near Morris’ trailer.
Deputy Jones saw a light shining in the woods below the trailer soon after he arrived on the scene. He then heard a vehicle start and radioed another officer who stopped Toler’s truck as Toler drove up in it from the woods near a pond below Morris’ trailer.
Toler told the officer he had been bathing in the pond and had not been near the trailer, but Deputy Jones testified Toler appeared dry and dirty. There was a flashlight in Toler’s truck but no property from *1117 the trailer was found in Toler’s possession. Toler’s fingerprint was lifted from a piece of broken- windown on Morris’ trailer.
Some personal property from the trailer was found in a nearby ditch. No identifiable fingerprints belonging to Toler were found on the property.
A tracking dog from the Clay County Sheriff’s Department named Bloodhound Andy traced a scent from the point where the stolen property was found in the ditch to the point near the trailer where the footprints and tire tracks were found. There was no testimony that the dog was a purebred bloodhound. There was, however, testimony that the dog had a 100% success rate in seven human trackings, and that Lieutenant Miller, who testified concerning the tracking evidence, had worked with the dog on 17 different occasions. Despite defense counsel’s objection, Lieutenant Miller was allowed to testify.
Defense counsel’s motions for judgment of acquittal based on the insufficiency of the evidence were denied by the trial court.
We first reject Toler’s contention that the testimony concerning the fingerprint, footprints, and tire tracks was irrelevant and therefore inadmissible. Relevant evidence is evidence tending to prove or disprove a material fact. Section 90.401, Florida Statutes (1983). The testimony in question was relevant because it tended to prove the material fact that Toler had been at or near Morris’ trailer.
Toler also challenges the admission of testimony concerning the conduct of the tracking dog. He contends the evidence was inadmissible because there was no evidence the dog was a purebred bloodhound.
Evidence of the conduct of a dog in trailing an accused is admissible provided a proper foundation is laid. Tomlinson v. State, 129 Fla. 658, 176 So. 543, (1937); Edwards v. State, 390 So.2d 1239 (Fla. 1st DCA 1980). Florida courts have never held that a proper foundation necessarily requires evidence that the dog is purebred, although breeding is one of several factors the trial court should take into account in determining the adequacy of the foundation. Davis v. State, 46 Fla. 137, 35 So. 76 (1903). Other important factors include evidence of the dog’s tracking ability and training.
Here, Lieutenant Miller’s testimony that Bloodhound Andy had successfully tracked humans on seven prior occasions and his testimony that Andy had been extensively trained to track humans provided a sufficient foundation. The trial court did not err in allowing the challenged testimony.
Finally, we reject Toler’s argument that the trial court erred in denying his motions for judgment of acquittal. He contends the evidence adduced at trial failed to exclude every reasonable hypothesis of innocence. Specifically, he contends the testimony concerning the fingerprint, footprints, and tire tracks proved nothing because it did not link the creation of the prints and tracks to the time of the burglary. He also argues that his explanation, that he was in the area to bathe, was a reasonable hypothesis of innocence not excluded by the evidence.
In some cases, a conviction based solely on fingerprint evidence cannot stand unless there is a showing that the prints could only have been made at the time the crime was committed. See, e.g., Williams v. State, 308 So.2d 595 (Fla. 1st DCA 1975). But that rule does not apply in the case before us because the conviction was not based solely on fingerprint evidence or, for that matter, footprint or tire track evidence.
In addition to the testimony concerning the prints and tracks, there was evidence Toler was present in the woods near the trailer immediately after the burglary. There was also evidence that the tracking dog followed a scent from the point where stolen property was found to a point near the footprints and tire tracks. Taken as a whole, the evidence was sufficient to withstand motions for judgment of acquittal. The jury could have reasonably concluded Toler’s story that he was in the area to *1118 bathe was not a reasonable hypothesis of innocence.
AFFIRMED.
ERVIN, C.J., and ZEHMER, J., concur.